No. 21-1202 T
(Senior Judge Marian Blank Horn)

---

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

———————

STEPHANIE L. FLINT AND DAVID J. JONES, AS EXECUTORS,
ESTATE OF MARGARET J. JONES,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

———————

**MOTION AND BRIEF OF THE UNITED STATES
TO DISMISS THE COMPLAINT**

———————

DAVID A. HUBBERT
Acting Assistant Attorney General

DAVID I. PINCUS
G. ROBSON STEWART
JASON S. SELMONT
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C.  20044
(202) 616-3338
(202) 514-9440 (facsimile)
Jason.S.Selmont@usdoj.gov

---

---

**TABLE OF CONTENTS**

Page

MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT……………………..v

BRIEF IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS THE

COMPLAINT…………………………………………………………………………………..1

BACKGROUND…………………………………………………………………………………2

I.    The IRS's Offshore Voluntary Disclosure Programs………………………………3

    A.    Offshor Voluntary Disclosure Program…………………………………4

    B.    Streamlined Filing Compliance Procedures…………………………………...5

    C.    The Miscellaneous Offshore Penalty…………………………………………8

II.   Mrs. Jones's Disclosure and Subsquent Examination……………...………………9

    A.    Mrs. Jones's Streamlined Domestic Offshore Submission……………...……10

    B.    Margaret Jones's Title 26 and FBAR Examination……………..……………13

    C.    Estate of Jeffrey Jones's FBAR Examination…………………..……………14

    D.    United States District Court FBAR Cases…………………………………....14

ARGUMENT……………………………………………………………………………………15

I.    This Court lacks subject matter jurisdiction over plaintiff's illegal exaction claim because plaintiffs have failed to file a claim for refund of the Miscellaneous Offshore penalty with the IRS……………………………………………………………………....15

II.   Plaintiffs have failed to state a claim for a breach of contract……………………..17

    A.    The submission of Form 14654 did not create a contract between and the IRS……………………………………………………………………….....18

        1.    The IRS did not intend to be bound by a taxpayer's representations contained in the Form 14654……………………………………………......18

        2.    The Streamlined Procedures were not an offer that Mrs. Jones could accept by performance………………………………………………21

i

B.   Even if there were a contract, plaintiffs have failed to state a claim for breach of contract…………………………………………………………………..22

CONCLUSION………………………………………………………………………………23

APPENDIX (Defendant's Exhibits):

Declaration of Jason S. Selmont ......................................................................................... 1

Defendant Exhibit 1: Form 14654, Certification by U.S. Person Residing in the United States, for Streamlined Domestic Offshore Procedures............................................................A-1

Defendant Exhibit 2: Excerpts of Form 1040-X of Jeffrey L. Jones and Margaret J. Jones for tax year 2011.....................................................................................................A-14

Defendant Exhibit 3: Excerpts of Form 1040-X of Jeffrey L. Jones and Margaret J. Jones for tax year 2012.....................................................................................................A-18

Defendant Exhibit 4: Letter dated May 11, 2018 regarding the FBAR examination of Jeffrey L. Jones.....................................................................................................A-22

Defendant Exhibit 5: Article "Offshore Voluntary Disclosure Program Ending at the Right Time" (Oct. 10, 2018).................................................................................A-23

Defendant Exhibit 6: Letter dated September 13, 2016 regarding the income tax examination of Margaret J. Jones..............................................................................A-25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander Proudfoot Co. v. United States*,
   454 F.2d 1379 (Ct. Cl. 1972) ...............................................................17

*American Fed. Bank, FSB v. United States*,
   58 Fed. Cl. 429 (2003) .........................................................................18

*Anderson, et al. v. United States*,
   344 F.3d 1343 (Fed. Cir. 2003)............................................................18

*Cutler-Hammer, Inc. v. United States*,
   441 F.2d 1179 (Ct. Cl. 1971) ...............................................................21

*Dewees v. United States*,
   272 F. Supp. 3d 96 (D.D.C. 2017) ..........................................................3

*Durant v. United States*,
   16 Cl. Ct. 447 (1988) ...........................................................................17

*Flora v. United States*,
   362 U.S. 145 (1960) .............................................................................16

*Girling Health Sys., Inc. v. United States*,
   22 Cl. Ct. 66 (1990) .............................................................................21

*Gluck v. United States*,
   84 Fed. Cl. 609 (2008) .........................................................................16

*Hampton v. United States*,
   513 F.2d 1234 (Ct. Cl. 1975) ...............................................................16

*Harrison v. IRS*,
   No. 20-cv-828, 2021 WL 930266 (D.D.C. Mar. 11, 2021) .........................9, 10, 15

*Heckler v. Chaney*,
   470 U.S. 821 (1985)................................................................................8

*Hometown Fin., Inc. v. United States*,
   409 F.3d 1360 (Fed. Cir. 2005)............................................................18

*Landgraf v. United States*,
   151 Fed. Cl. 326 (2020) ...............................................................19, 20

*Last Chance Mining Co. v. United States*,
    12 Cl. Ct. 551 (1987) ..................................................................................21, 22

*Margaret J. Jones v. United States*,
    2:19-CV-04950-JVS(RAO) (C.D. Cal.) .............................................................14

*Maze v. Internal Revenue Serv.*,
    206 F. Supp. 3d 1 (D.D.C. 2016) .................................................................. *passim*

*Merrick v. United States*,
    846 F.2d 725 (Fed. Cir. 1988)............................................................................21

*T. C. Bateson Const. Co. v. United States*,
    319 F.2d 135 (Cl. Ct. 1963) ...............................................................................23

*United States v. Clintwood Elkhorn Min. Co.*,
    553 U.S. 1 (2008).......................................................................2, 15, 16, 17

*United States v. Dalm*,
    494 U.S. 596 (1990)...........................................................................................17

## Statutes

I.R.C. § 6662 ..................................................................................................................5

I.R.C. § 7121 ................................................................................................................20

I.R.C. § 7422 .......................................................................................2, 15, 16, 17

I.R.C. § 7803 ..................................................................................................................8

## Other Authorities

H.R Rep. No. 101-386 (1989)........................................................................................8

Offshore Voluntary Disclosure Program Frequently Asked Questions and
    Answers 2014, https://perma.cc/FGT5-DQH5 (last visited June 29, 2021)....................4, 5, 6

Policy Statement P-20-1 .................................................................................................8

Rule of the United States Court of Federal Claims Rule 12 .........................................1

Streamlined Domestic Offshores Procedures, https://perma.cc/4Q6H-295Q (last
    visited June 29, 2021) ...................................................................................................6

Streamlined Filing Compliance Procedures, https://perma.cc/P4US-G5E5 (last
    visited June 29, 2021) ..............................................................................................5, 6

Treas. Reg. § 301.6402-2(b) ..........................................................................................2

iv

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

——————————

No. 21-1202 T
(Senior Judge Marian Blank Horn)

STEPHANIE L. FLINT AND DAVID J. JONES, AS EXECUTORS,
ESTATE OF MARGARET J. JONES

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

——————————————————————

## MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT
——————————————————————

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of
Federal Claims (Rule(s) or RCFC), defendant, the United States, by and through its counsel of
record, respectfully moves this Court for an order dismissing the complaint because this Court
lacks subject matter jurisdiction over the complaint and because plaintiffs have failed to state a
claim upon which relief can be granted.  If defendant prevails on this motion, the complaint
should be dismissed and an appropriate order entered.

In support of its motion, the United States relies on the accompanying brief, the exhibits
attached to plaintiffs' complaint, and the exhibits attached herewith.

Respectfully submitted,

June 29, 2021                           /s/ Jason S. Selmont
                                        JASON S. SELMONT
                                        Attorney of Record
                                        U.S. Department of Justice
                                        Tax Division
                                        Court of Federal Claims Section
                                        Post Office Box 26

Ben Franklin Post Office
Washington, D.C. 20044
Tel: (202) 616-3338
Fax: (202) 514-9440
Jason.S.Selmont@usdoj.gov

DAVID A. HUBBERT
    Acting Assistant Attorney General
DAVID I. PINCUS
    Chief, Court of Federal Claims Section
G. ROBSON STEWART
    Assistant Chief, Court of Federal Claims Section

 /s/ G. Robson Stewart
Of Counsel

Attorneys for the United States

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 21-1202 T
(Senior Judge Marian Blank Horn)

STEPHANIE L. FLINT AND DAVID J. JONES, AS EXECUTORS,
ESTATE OF MARGARET J. JONES

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

_____

**BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS THE COMPLAINT**

_____

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (Rule(s) or RCFC), defendant, the United States, by and through its counsel of record, respectfully moves this Court for an order dismissing the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

In their complaint, plaintiffs, as Executors of the Estate of Margaret J. Jones, seek a refund of a miscellaneous offshore penalty ("MOP") in the amount of $156,795.26, which Mrs. Jones paid to the Internal Revenue Service ("IRS") under one of the IRS's offshore settlement initiatives. Plaintiffs make two arguments. *First*, plaintiffs allege that there was a contract between Mrs. Jones and the IRS not to assess penalties beyond the MOP, which the IRS allegedly breached when it assessed a willful FBAR penalty against Mrs. Jones. *Second*, plaintiffs allege that the MOP constitutes an illegal exaction because, as plaintiffs allege, the MOP is "nowhere to be found in any statute." (Compl. ¶ 55.)

1

This Court lacks jurisdiction over plaintiffs' illegal exaction claims because, as discussed herein, this case is fundamentally a tax refund suit that can only be brought under I.R.C. § 7422,[1] and plaintiffs have failed to comply with the jurisdictional prerequisites to file a tax refund suit. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 12 (2008); § 7422; Treas. Reg. § 301.6402-2(b).  Additionally, plaintiffs have failed to state a claim for which relief can be granted in their breach of contract theory of recovery because a contract between Mrs. Jones and the IRS did not exist, and even if one did, the IRS did not breach the purported contract. Accordingly, the Court should dismiss plaintiffs' complaint.

## BACKGROUND

Jeffrey and Margaret Jones repeatedly failed to disclose—in contravention of U.S. tax law—that they had millions of dollars in bank accounts in Canada and New Zealand and that these accounts had generated taxable income.  Following Mr. Jones's death, Mrs. Jones chose to come clean about her undisclosed foreign bank accounts and to settle the resulting potential liability with the IRS.  Using the IRS's Streamlined Filing Compliance Procedures, Mrs. Jones self-certified that her failure to report all income, pay all tax, and submit all required information returns, including FBARs, was due to non-willful conduct, and she paid a reduced penalty.  This self-certification and penalty reduction, signed by Mrs. Jones, came with a warning—that if the IRS receives or discovers evidence of willfulness, fraud, or criminal conduct, it may open an examination or investigation that could lead to civil fraud penalties, FBAR penalties, information return penalties, or even referral for criminal investigation.  Despite this warning, Mrs. Jones affirmed that her actions were non-willful.  Following a civil examination of the Joneses' income

---

[1] Unless specified otherwise, references to "section" or "§" are to the Internal Revenue Code of 1986, as amended, 26 U.S.C.

tax returns and FBAR compliance, however, the IRS determined that the Joneses' failure to disclose their foreign financial accounts was willful and imposed willful FBAR penalties. Her executors now attempt to recoup the penalty she paid with her Streamlined Procedure submission.

## I.    The IRS's Offshore Voluntary Disclosure Programs

Because it lacks the resources necessary to investigate every potential instance of tax evasion, the IRS utilizes voluntary disclosure as a tool to encourage non-compliant taxpayers to come into compliance. *See Maze v. Internal Revenue Serv.*, 206 F. Supp. 3d 1, 5-6 (D.D.C. 2016); *Dewees v. United States*, 272 F. Supp. 3d 96, 99 (D.D.C. 2017), *aff'd* 767 Fed. App'x 4 (D.C. Cir. 2019); *see also* I.R.M. 9.5.11.9 (addressing the IRS's voluntary disclosure practice). For roughly 70 years, the Government has offered voluntary disclosure practices in varying forms. Over the last two decades, the IRS has offered specific, tailored offshore compliance programs based on its traditional voluntary disclosure practice through well-publicized initiatives offering taxpayers who have undisclosed offshore assets an opportunity to resolve their civil liabilities for tax and penalties on predictable terms and avoid criminal prosecution. *See, e.g.*, *Dewees*, 272 F. Supp. 3d at 99.

To encourage taxpayers with foreign financial assets to come into compliance with their reporting obligations, beginning in 2009, the IRS offered several offshore settlement programs.[2]

---

[2] Over time, the IRS modified these programs to encourage different categories of taxpayers (with different degrees of potential criminal or civil liability) to come forward. The IRS reported in 2018 that various iterations of the IRS's Offshore Voluntary Disclosure Programs ("OVDP") brought more than 57,000 taxpayers into compliance and collected over $11.6 billion in delinquent taxes, penalties, and interest—all without devoting the substantial resources that would have been necessary to conduct thousands of examinations on a taxpayer-by-taxpayer basis. (*See* Def. Exh. 5 at A-23 (Offshore Voluntary Disclosure Program Ending at the Right Time).)

A significant feature of the various offshore settlement programs was that the IRS would limit the number of tax years considered and consolidate all the penalties for which taxpayers would otherwise be liable in a one-time payment, referred to as a "miscellaneous offshore penalty" ("MOP"). *Maze*, 206 F. Supp. 3d 1 at 6. The so-called MOP was typically measured as a percentage of the highest aggregate balance of the taxpayers' foreign accounts and value of their foreign assets. In 2015, when Mrs. Jones sought to come into compliance with her tax and reporting obligations, there were two basic types of compliance methods: Offshore Voluntary Disclosure Program ("OVDP") and Streamlined Filing Compliance Procedures ("Streamlined Procedures").[3]

> A.   **Offshore Voluntary Disclosure Programs[4]**

To participate in OVDP, a taxpayer needed to comply with the following requirements, among others: (1) file *eight* years of tax returns and Reports of Foreign Bank and Financial Accounts ("FBARs"); (2) pay tax and interest for *eight* years; (3) pay accuracy-related penalties for *eight* years; and (4) pay a Title 26 miscellaneous offshore penalty equal to 27.5% of the value of the taxpayer's noncompliant foreign assets. Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2014, https://perma.cc/FGT5-DQH5 (last visited June 29, 2021).

---

[3] Between 2009 and 2018, the IRS offered four iterations of the Offshore Voluntary Disclosure Program. Beginning in 2012, the IRS also offered a Streamlined Filing Compliance Procedure where the failure to report all income, pay all tax, and submit all required information returns, including FBARs, was due to non-willful conduct. The Streamlined Procedures included separate requirements for taxpayers who met a non-residency test and those who did not meet the non-residency test.

[4] The requirements of OVDP discussed herein are to those in effect at the time Mrs. Jones made her submission under the Streamlined Procedures.

In return for full compliance with the applicable requirements, the IRS offered participants the following three primary benefits. *First*, with the exception of the accuracy-related penalties under § 6662(a), the IRS compromised all penalties for which a taxpayer may be liable by paying the MOP. *Id.* at FAQ No. 7. This compromise includes "FBAR and offshore-related information return penalties and tax liabilities for years prior to the voluntary disclosure period." *Id. Second*, the IRS did not refer a taxpayer for criminal prosecution for any matter relating to tax noncompliance or failure to file a FBAR. *Id.* at FAQ No. 3. As the IRS explained to potential participants, disclosure under OVDP "generally eliminate[s] the risk of criminal prosecution for all issues relating to tax noncompliance and failing to file FBARs" for prior tax years. *Id.* at FAQ No. 4. *Third*, the IRS and the taxpayer entered into a closing agreement, which is a final civil settlement of all matters relating to the disclosure period and to years prior to the disclosure period. *Id.* at FAQ No. 7.

**B.      Streamlined Filing Compliance Procedures**

In 2012, the IRS introduced the Streamlined Filing Compliance Procedures. Initially, the Streamlined Procedures were designed for U.S. citizens residing abroad who had not filed income tax and information returns. *See* Streamlined Filing Compliance Procedures, https://perma.cc/P4US-G5E5 (last visited June 29, 2021) ("2014 Streamlined Procedures"). Because significant resources were being expended on examinations of taxpayers that did not have realistic exposure to civil fraud penalties, civil willful FBAR penalties, or criminal liability, the IRS revised the Streamlined Procedures. In 2014, the revised Streamlined Procedures expanded the eligibility criteria and created two distinct procedures for differing populations,

including individuals, like the Joneses, who did not meet a non-residency test.[5]  The IRS

explained that "[t]he modified streamlined procedures are designed only for individual

taxpayers" whose "failure to report all income, pay all tax and submit all required information

returns, including FBARs . . . was due to non-willful conduct."  *Id.*  Unlike the various iterations

of OVDP, the Streamlined Procedures involved only civil functions within the IRS.

 The 2014 Streamlined Procedures—those in effect at the time of Mrs. Jones's

submission—directed a taxpayer to complete the following requirements, among others: (1) file

*three* years of tax returns (including information returns) and *six* years of FBARs; (2) pay tax and

interest for *three* years; (3) submit Form 14654 requiring a narrative explanation concerning the

taxpayer's compliance failures; and (4) pay a Title 26 miscellaneous offshore penalty equivalent

to 5% of the value of the taxpayer's foreign assets.  U.S. Taxpayers Residing in the United

States, https://perma.cc/75ZN-JF7H (last visited June 29, 2021) ("2014 SDO Procedures").  "In

return, these filings and payments serve as a compromise for all penalties not involving

willfulness for the three years covered by the program."  *Maze*, 206 F. Supp. 3d at 7; *see also*

2014 Streamlined Procedures.  Indeed, participation in the Streamlined Procedures left available

the IRS to pursue the taxpayer for fraud-related penalties for all years and for willful FBAR

penalties for all years, as well as other penalties from the years *prior* to the three years submitted

under the Streamlined Procedures..  *See Maze*, 206 F. Supp. 3d at 7.  Moreover, "the Streamlined

Procedures do not involve any assurance regarding a decision not to refer the matter for criminal

---

[5] Individuals who meet a non-residency test were eligible for the Streamlined *Foreign* Offshore
Procedures ("SFO"), whereas those who do not meet a non-residency test were eligible for the
Streamlined *Domestic* Offshore Procedures ("SDO").  For background information on the SFO
procedures, see generally https://perma.cc/4Q6H-295Q (last visited June 29, 2021).

prosecution—as the OVDP does—nor do they involve a final settlement agreement resolving tax issues pertaining to prior years." *Maze*, 206 F. Supp. 3d at 7; *see also* 2014 SDO Procedures.

Returns submitted under the Streamlined Procedures may be subject to IRS examination, additional civil penalties, and even criminal liability, if appropriate.  2014 SDO Procedures.  The IRS cautioned taxpayers with willful compliance failures to consider participating in the Offshore Voluntary Disclosure Program where they can seek assurance that they will not be subject to criminal liability, substantial monetary penalties, or both.  2014 Streamlined Procedures.

In addition to submitting amended returns and tax payments, taxpayers using the Streamlined Procedures must pay a 5% Title 26 miscellaneous offshore penalty.  "The Title 26 miscellaneous offshore penalty is equal to 5 percent of the highest aggregate balance/value of the taxpayer's foreign financial assets that are subject to the miscellaneous offshore penalty during the years in the covered tax return period and the covered FBAR period."  2014 SDO Procedures.  A foreign financial asset is subject to the 5-percent miscellaneous offshore penalty if (1) the asset should have been, but was not, reported on an FBAR during the six year FBAR period, (2) the asset should have been, but was not, reported on a Form 8938 during the three-year tax period, or (3) the asset was properly reported on an FBAR or Form 8938 but gross income from the asset was not reported in the three-year tax period.  *Id.*

Assuming a submission meets the eligibility criteria and is complete, the IRS does not assess any penalties (including FBAR penalties) beyond the MOP.  As the IRS explained "[a] taxpayer who is eligible to use these Streamlined Domestic Offshore Procedures and who complies with all of the instructions . . . will not be subject to accuracy-related penalties,

information return penalties, or FBAR penalties." *Id.*  But, as stated above, all submissions remain subject to examination. *Id.*

### C.     The Miscellaneous Offshore Penalty

The Miscellaneous Offshore Penalty is a penalty assessed and collected under the internal revenue laws (Title 26 of the U.S. Code) in lieu of certain other penalties.[6]  Because the MOP is assessed and collected as a Title 26 penalty, a taxpayer suing for a refund of the MOP is suing for a refund of consolidated penalties arising under multiple statutes and possible tax loss for tax periods preceding the three year lookback period for amended income tax returns.

The IRS has adopted a penalty policy, set forth in Policy Statement P-20-1, emphasizing that civil tax penalties exist for the purpose of encouraging voluntary compliance.  I.R.M. 1.2.1.12.1 (06-29-2004); *see also* H.R. Rep. No. 101-386, at 611 (1989) (Conf. Rep.) (indicating Congressional intent that the IRS should develop a policy statement emphasizing that civil tax penalties exist for the purpose of encouraging voluntary compliance).  The IRS's penalty policy specifically states that "[i]n limited circumstances where doing so will promote sound and efficient tax administration, the [IRS] may approve a reduction of otherwise applicable penalties or penalty waiver for a group or class of taxpayers as part of [an IRS]-wide resolution strategy to encourage efficient and prompt resolution of cases of noncompliant taxpayers."  I.R.M. 1.2.1.12.1 at ¶ 7.  The various iterations of OVDP and the Streamlined Procedures implemented

---

[6] Under § 7803(a)(2)(A), the Commissioner of Internal Revenue has the authority "to administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws."  The authority to enforce a law includes the authority to refrain from taking enforcement action. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

the IRS's Policy Statement with respect to penalties for taxpayers with undisclosed foreign assets and income.

In return for full compliance with the applicable program requirements, the IRS was able to resolve administratively participants' tax compliance issues and to consolidate all penalties into one penalty—the MOP.  As the District Court in *Maze* held, the MOP "is not a new penalty that the IRS invented."  *Maze*, 206 F. Supp. 3d at 14.  Rather, "it is a label that the IRS developed to refer to standard payments required of taxpayers in in lieu of other statutorily created penalties."  *Id.*  Whereas the IRS could have assessed taxes for earlier years, civil tax fraud penalties, failure-to-pay penalties, and a litany of information return penalties, as a matter of administrative expedience, the IRS imposed the one-time MOP.  In effect, the MOP is simply a substitute for other Title 26 penalties and tax loss for years prior to the disclosure period.  Because those other penalties are considered taxes, in similar fashion the MOP is considered a tax under the internal revenue laws.  *Maze*, 206 F. Supp. 3d at 14; *see also Harrison v. IRS*, No. 20-cv-828, 2021 WL 930266, *4 (D.D.C. Mar. 11, 2021).[7]

## II.    Mrs. Jones's Disclosure and Subsequent Examination

In 2015, Mrs. Jones opted to acknowledge her undisclosed foreign financial accounts and income and resolve the resulting liability by complying with the Streamlined Procedures in effect at that time.  As stated above, Mrs. Jones was required to (1) file *three* years of tax returns (including information returns) and *six* years of FBARs; (2) pay tax and interest for *three* years; (3) submit Form 14654 requiring a narrative explanation concerning the taxpayer's compliance

---

[7] The various iterations of OVDP and the 2014 Streamlined Procedures differ materially and were designed and implemented to bring differing populations of taxpayers into compliance.  But as to the miscellaneous offshore penalties asserted by both, the common element is taxpayer consent to assessment and collection of the MOP as a Title 26 penalty in lieu of other applicable penalties.

9

failures and (4) pay a Title 26 miscellaneous offshore penalty equivalent to 5% of the value of the taxpayer's foreign assets.  *See* 2014 SDO Procedures.

A.      **Mrs. Jones's Streamlined Domestic Offshore Submission**

About April 13, 2015, Mrs. Jones filed Form 14654, Certification by U.S. Person Residing in the United States, for Streamlined Domestic Offshore Procedures for tax years 2011, 2012, and 2013.[8]  (Def. Exh. 1 at A-1–A-13.)  As part of the Streamlined Procedures certification, Mrs. Jones indicated she owed no tax or interest for tax years 2011, 2012, or 2013.  (*Id.* at A-1.)  However, prior to filing her certification, Mrs. Jones made a "quiet disclosure"[9] in July 2014 when she filed amended income tax returns for her and her late husband for tax years 2011 and 2012.  (*See* Def. Exh. 2; Def. Exh. 3.)

The Joneses' 2011 amended returns reported an increase in taxable income of $251,209 and additional tax due of $51,104.  (Def. Exh. 2 at A-14.)  Thus, for tax year 2011, Mr. and Mrs. Jones failed to report over $250,000 in income and failed to pay over $50,000 in tax on their original income tax returns.  (*See id.*)  The increase in taxable income for 2011 was comprised of the following previously unreported interest earned from foreign bank accounts[10]:

| Financial Institution | Previously Unreported Interest |
|---|---|
| ANZ Bank | $21,118 |
| Bell Gully | $80,689 |
| Heartland | $28,903 |
| New Zealand Inland Revenue | $110,434 |

[8] The complaint alleges Mrs. Jones made her submission under the Streamlined Procedures on March 16, 2015.  (Compl. ¶ 23.)  However, the Form 14654 in the IRS's administrative file bears the date April 13, 2015 next to Mrs. Jones's signature.  (Def. Exh. 1 at A-4, A-13.)

[9] A "quite disclosure" generally refers to simply filing amended returns (or delinquent returns) with an IRS service center rather than using a compliance option such as OVDP or the Streamlined Procedures.

[10] The foreign accounts include both Mr. Jones's accounts and the accounts Mrs. Jones held individually or jointly with Mr. Jones.

| | |
|---|---|
| Royal Bank of Canada | $10,065 |
| **Total** | **$251,209** |

(*Id.* at A-14, A-17.)

Likewise, the Joneses' 2012 amended returns reported an increase in taxable income of

$245,192 and additional tax due of $52,313.  (Def. Exh. 3 at A-18.)  Thus, in tax year 2012, Mr.

and Mrs. Jones *again* failed to report nearly $250,000 in income and failed to pay over $50,000

in tax on their original income tax returns.  (*See id.*)  The increase in taxable income for 2012

was comprised of the following previously unreported interest earned from foreign bank

accounts:

| Financial Institution | Previously Unreported Interest |
|---|---|
| ANZ Bank | $20,656 |
| Bell Gully | $27,438 |
| Heartland | $37,778 |
| New Zealand Inland Revenue | $154,999 |
| Royal Bank of Canada | $4,321 |
| **Total** | **$245,192** |

(*Id.* at A-18, A-21.)  Mrs. Jones included payments in the amounts of $51,104 and $52,313 of

additional taxes with the July 2014 "quiet disclosure."

Thereafter—and only after having filed amended tax returns and after having paid the

additional tax owed—did she avail herself of the Streamlined Procedures.  Mrs. Jones submitted

Form 14654, Certification by U.S. Person Residing in the United States for Streamlined

Domestic Offshores Procedures.  (Def. Exh. 1.)  Form 14654 required Mrs. Jones to disclose

information about her amended income tax return.  (*See id.* at A-1)  Specifically, the form states:

"I am providing amended income tax returns, including all required information returns, for each

of the most recent 3 years for which the U.S. tax return due date (or properly applied for

extended due date) has passed. I previously filed original tax returns for these years." (*Id.*)  The

form continues with space for the taxpayer to indicate the tax and interest owed on amended

11

returns.  (*Id.*)  Because Mrs. Jones had previously submitted amended income tax returns through a "quiet disclosure," she filled in the space with zeros, indicating that she did not owe any additional tax or interest with her submission.  (*Id.*)

Additionally, the form requires the disclosure of a taxpayer's foreign financial assets subject to the 5% MOP for each year of the 3-year covered tax return period or the 6-year covered FBAR period.  Mrs. Jones attached a schedule of accounts to her Form 14654 listing her foreign accounts.  (*Id.* at A-5 – A-10.)  Mrs. Jones then calculated the MOP based on the following 2012 account balances:[11]

| Financial Institution | Account Number | Year-End Balance (USD) |
|---|---|---|
| Bell Gully | **-***-7997 | $1,556,054.69 |
| Bell Gully | **-***-7847 | $291,043.29 |
| ANZ Bank | ********1015 | $186,585.63 |
| ANZ Bank | **-****-****02-00 | $15,183.43 |
| Royal Bank of Canada | ***3835 | $168,762.72 |
| Royal Bank of Canada | ***3819 | $65,572.92 |
| Royal Bank of Canada | *******1922 | $852,702.57 |
| **Total Aggregate Year-End Balance** | | **$3,135,905.24** |
| **MOP** | | **$156,795.26** |

(*Id.* at A-3.)

After making a disclosure of tax return information and foreign financial accounts, Form 14654 sets forth further requirements for using the Streamlined Procedures.  Specifically, the form states:

> In consideration of the Internal Revenue Service's agreement not to assert other penalties with respect to my failure to report foreign financial assets as required on FBARs or Forms 8938 or my failure to report income from foreign financial assets, I consent to the immediate assessment and collection of a Title 26 miscellaneous offshore penalty for the most recent of the three tax years for which I am providing amended income tax returns. I waive all defenses against and restrictions on the assessment and collection of the miscellaneous offshore

---

[11] Mrs. Jones did not include Mr. Jones's accounts in the penalty calculation because she was the "only one participating in the Streamlined Submission."  Mr. Jones did not make a voluntary disclosure submission prior to his death.

penalty, including any defense based on the expiration of the period of limitations
on assessment or collection. I waive the right to seek a refund or abatement of the
miscellaneous offshore penalty.

(*Id.* at A-3.)  Additionally, Mrs. Jones agreed with the statement: "My failure to report all

income, pay all tax, and submit all required information returns, including FBARs, was due to

non-willful conduct.  I understand that non-willful conduct is conduct that is due to negligence,

inadvertence, or mistake or conduct that is the result of a good faith misunderstanding of the

requirements of the law."  (*Id.*)

Form 14654 also comes with a warning.  Specifically, the form indicates: "I recognize

that if the Internal Revenue Service receives or discovers evidence of willfulness, fraud, or

criminal conduct, it may open an examination or investigation that could lead to civil fraud

penalties, FBAR penalties, information return penalties, or even referral to Criminal

Investigation." (*Id.*)  Despite this warning, Mrs. Jones signed and submitted Form 14654 to the

IRS.  (*Id.* at A-4.)  When Mrs. Jones signed Form 14654 under penalty of perjury, she "declared"

that she had "examined this certification," which necessarily included the information she was

disclosing and the statements that she certified she understood.  (*Id.*)

### B.      Margaret Jones's Title 26 and FBAR Examination

Following the IRS's review of Mrs. Jones's submission under the Streamlined

Procedures, her submission was referred for an examination because Mrs. Jones did not meet the

qualifications to use the Streamlined Procedures.  Subsequently, the IRS informed Mrs. Jones

that her 2013 tax year was under examination, and that it would also conduct an examination of

her FBAR filing compliance.  (Def. Exh. 6 at A-31.)  On February 8, 2019, the IRS assessed

willful FBAR penalties totaling $1,521,910 for 2011 and 2012 against Mrs. Jones for her willful

failure to disclose the foreign financial accounts she owned either individually or jointly with

Mr. Jones.  (Compl. ¶ 43.)

13

###### C.        Estate of Jeffrey Jones's FBAR Examination

About May 11, 2018, the IRS notified Mrs. Jones, in her capacity as executrix of Mr. Jones's estate, that it had opened an examination of Mr. Jones's FBAR filing compliance.  (Def. Exh. 4 at A-22.)  On November 8, 2018, the IRS assessed a willful FBAR penalty in the amount of $1,890,074 for 2011 against the Estate of Jeffrey Jones for Mr. Jones's willful failure to disclose the four accounts Mr. Jones held individually.  (Compl. ¶ 42.)

###### D.        United States District Court FBAR Cases

Mrs. Jones, individually and as executor of the Estate of Jeffrey Jones, made a partial payment of the FBAR penalties assessed against her and the Estate of Jeffrey Jones.  (Compl. ¶¶ 44-45.)  Subsequently, Mrs. Jones filed two complaints in the United States District Court for the Central District of California seeking to recover the partial payments made toward the FBAR penalty assessments against herself and the Estate of Jeffrey Jones.  (*Margaret J. Jones v. United States*, 2:19-CV-04950-JVS(RAO) (C.D. Cal.), Dkt. No. 1; *Margaret J. Jones, as Executor, Estate of Jeffrey Jones v. United States*, 2:19-CV-00173-JVS(RAO) (C.D. Cal.), Dkt. No. 1.) The complaint filed on behalf of the Estate was filed on January 8, 2019, and Mrs. Jones's individual complaint was filed on April 15, 2019.  (*Margaret J. Jones, as Executor, Estate of Jeffrey Jones v. United States*, Dkt. No. 1; *Margaret J. Jones v. United States*, Dkt. No. 1.)  On December 21, 2020, the parties filed a Stipulation to Dismiss the complaint filed by the Estate of Jeffrey Jones, Mrs. Jones's complaint, and the United States' counterclaims.  (*Margaret J. Jones v. United States*, Dkt. No. 61; *Margaret J. Jones, as Executor, Estate of Jeffrey Jones v. United States*, Dkt. No. 72.)

**ARGUMENT**

Plaintiffs have failed to properly invoke this Court's jurisdiction over their illegal

exaction claim because plaintiffs have failed to file a claim for refund with the IRS for the return

of the Miscellaneous Offshore Penalty.  Because plaintiffs have failed to comply with the

administrative prerequisites for filing a tax refund suit, their suit is barred under § 7422.

Furthermore, plaintiffs have failed to state a claim for breach of contract because Mrs. Jones's

submission of Form 14654 did not create a contract with the IRS, and even if it had, the IRS did

not breach the purported contract.  Accordingly, the Court should dismiss plaintiffs' complaint.

I.      **This Court lacks subject matter jurisdiction over plaintiffs' illegal exaction claim
        because plaintiffs have failed to file a claim for refund of the Miscellaneous Offshore
        Penalty with the IRS.**

Plaintiffs alleges that the "5% MOP was collected and illegally exacted without any

authority in the law or any statute."  (Compl. ¶ 14.)  Plaintiffs are incorrect.  The MOP is a Title

26 penalty paid in lieu of other penalties under the internal revenue laws.  *See Maze*, 206 F.

Supp. 3d at 6; *Harrison*, 2021 WL 930266, *4 (holding, in a suit for the refund of the MOP,

"[t]he express purpose of the suit, then, is the recovery of money paid as penalties for violations

of the tax code—in other words, a 'refund'" and citing to § 7422(a)).  Because plaintiffs seek a

refund of money paid as tax penalties, plaintiffs were required to file an administrative claim for

refund with the IRS prior to bringing suit.  Here, plaintiffs have filed to file a claim for refund.

Accordingly, this Court lacks subject matter jurisdiction over plaintiffs' complaint.

A taxpayer suing for a refund of the MOP must satisfy the jurisdictional prerequisites of

filing a tax refund suit.  It is well-settled that before bringing a suit for the refund of an internal

revenue tax or penalty, taxpayers must first pay the amount of the assessed tax or penalty and file

a timely claim for refund with the IRS.  *See* § 7422(a); *United States v. Clintwood Elkhorn*

*Mining*, 553 U.S. 1, 4 (2008).  "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a

refund suit."  *Gluck v. United States*, 84 Fed. Cl. 609, 613 (2008).  Section 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any
> internal revenue tax alleged to have been erroneously or illegally assessed or
> collected, or of any penalty claimed to have been collected without authority, or
> of any sum alleged to have been excessive or in any manner wrongfully collected,
> until a claim for refund or credit has been duly filed with the Secretary, according
> to the provisions of law in that regard, and the regulations of the Secretary
> established in pursuance thereof.

§ 7422(a).  The United States Supreme Court has explained that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or
> collected may bring an action against the Government . . . in the United States
> Court of Federal Claims.  The Internal Revenue Code specifies that before doing
> so, the taxpayer must comply with the tax refund scheme established in the Code.
> That scheme provides that a claim for a refund must be filed with the Internal
> Revenue Service (IRS) before suit can be brought, and establishes strict
> timeframes for filing such a claim.

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) (citations omitted).

The plain language of § 7422(a) is broad; not only does it apply to income taxes and

penalties, it also applies to "any penalty claimed to have been collected without authority" as

well as "any sum alleged to have been excessive or in any manner wrongfully collected."  *Id.*

Indeed, the Supreme Court determined in *Clintwood Elkhorn Mining* that Congress intended a

broad scope for the application of § 7422(a).  There, the Supreme Court concluded that with

"[f]ive 'any's' in one sentence[,] . . . it begins to seem that Congress meant the statute to have

expansive reach."  *Clintwood Elkhorn Mining*, 553 U.S. at 7.  The Supreme Court concluded that

Congress intended "to cover taxes, penalties, *and sums which might, strictly speaking, be neither*

*taxes nor penalties*."  *Flora v. United States*, 362 U.S. 145, 193 n.16 (1960), *aff'g* 357 U.S. 63

(1958).  Thus, regardless of how plaintiff characterizes the MOP, at bottom, the sum Mrs. Jones

paid to the IRS as part of the Streamlined Procedures falls within the broad language of the

statute.  *Hampton v. United States*, 513 F.2d 1234, 1243 (Ct. Cl. 1975) (characterizing the phrase

16

"any sum" in § 7422(a) as "all inclusive"); *Alexander Proudfoot Co.*, 454 F.2d 1379, 1380 (Ct. Cl. 1972) (acknowledging that § 7422(a) "forbids, in *all-inclusive words*, any suit that falls within its terms" (emphasis added)).

Because a claim for refund is a jurisdictional prerequisite to filing suit, where, as here, no refund claim has been filed with the IRS, a refund suit "'may not be maintained in any court.'" *Clintwood Elkhorn Mining*, 553 U.S. at 5 (quoting *United States v. Dalm*, 494 U.S. 596, 602 (1990)). Here, plaintiffs have failed to allege that they have filed the requisite claim for refund with the IRS. *See* RCFC 9(m)(2) ("In pleading a claim for a tax refund, a party must include . . . a copy of the claim for refund[.]"). Similarly, plaintiffs have failed to allege or offer evidence of a claim disallowance letter from the IRS, which would suggest that a claim for refund had been filed. Having failed to file a claim for refund with the IRS, plaintiffs have failed to meet the jurisdictional prerequisites to file suit in this Court. Accordingly, this Court lacks subject matter jurisdiction over plaintiffs' complaint.

## II.   Plaintiffs have failed to state a claim for a breach of contract.[12]

Plaintiffs have invoked this Court's jurisdiction by alleging that Mrs. Jones entered into a contract with the IRS whereby the IRS would "not assert other penalties" beyond the miscellaneous offshore penalty when she submitted IRS Form 14654, *Certification by U.S. Person Residing in the United States for Streamlined Domestic Offshores Procedures* (August

---

[12] Plaintiffs' allegation that Mrs. Jones was induced into paying the MOP to avoid an income tax or FBAR audit may be construed as one for promissory estoppel. Promissory estoppel is a doctrine for enforcing promises which reasonably induce action or inaction and which are binding to the extent necessary to avoid injustice. *Durant v. United States*, 16 Cl. Ct. 447, 450 (1988). However, the Court of Federal Claims lacks jurisdiction to hear claims based on promissory estoppel. *Id.* at 450 ("Because the Tucker Act is interpreted to allow causes of action founded only on express or implied-in-fact contracts, the doctrine of promissory estoppel is not within the parameters of the Claims Court's jurisdiction.").

2014) pursuant to the Streamlined Procedures.  Plaintiffs also allege that the IRS breached the alleged contract "by assessing FBAR penalties," which, plaintiffs further allege, violated the terms of Form 14654.  (Compl. ¶ 53.)  Plaintiffs are incorrect on both scores.

**A.     The submission of Form 14654 did not create a contract between Mrs. Jones and the IRS.**

Plaintiffs allege that by submitting Form 14654 as part of the Streamlined Procedures, Mrs. Jones entered into a contract with the IRS.  (Compl. ¶ 10 (referring to Form 14654 as "contract Form 14654").)  Plaintiffs are incorrect because, simply put, Form 14654 is not a contract with the United States.  In order to prove the existence of a contract, plaintiffs must demonstrate four elements: "(1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005).  Notably, plaintiffs have failed to allege the basic elements of contract formation.

**1.     The IRS did not intend to be bound by a taxpayer's representations contained in Form 14654.**

The formation of a contract requires "[a]n objective manifestation of voluntary, mutual assent." *American Fed. Bank, FSB v. United States*, 58 Fed. Cl. 429, 436 (2003) (citing *Anderson, et al. v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)).  Mutuality of assent requires plaintiffs to "show, by objective evidence, the existence of an offer and a reciprocal acceptance." *Anderson*, 344 F.3d at 1353.  An offer is "'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* (quoting Restatement (Second) of Contracts § 24 (1981)).

The regulatory framework indicates that the IRS did not intend to be bound by Mrs. Jones's self-certification of non-willfulness.  Indeed, the plain language of the form that Mrs.

18

Jones signed and submitted indicates that the Mrs. Jones's self-certification of non-willfulness was subject to the potential for examination and additional penalties.  That the IRS left open the ability to conduct a complete examination and investigation of a taxpayer who used the Streamlined Procedures rejects the implication that the mere following of procedural steps is sufficient for another person to understand that a "bargain" was "concluded."

*Landgraf v. United States*, 151 Fed. Cl. 326 (2020), aids in confirming that the IRS did not intend to be bound to a taxpayer's self-certification under the Streamlined Procedures.  In *Landgraf*, a landowner sought to enroll his land in the Wetlands Reserve Program ("WRP") administered by the Natural Resources Conservation Service ("NRCS").  Under the WRP Manual, interested property owners had to apply to the NRCS, after which the NRCS "determined whether the landowner was eligible to participate and whether the property met certain criteria."  *Id.* at 319.  To evaluate a property owner's eligibility, NRCS "conducted onsite visits of the property with the landowner as part of the application process . . . and develop[ed] a preliminary Wetlands Reserve Plan of Operations ("WRPO")."  The preliminary WRPO contained detailed information to "[a]llow the landowner to understand the project's anticipated scope and effect" and to "[a]llow NRCS to develop a reasonable cost estimate for ranking purposes."  *Id.* (internal citations omitted).

Once the WRPO was complete, enrollment in the WRP was contingent on the landowner's agreement to the implementation of the WRPO.  Notably, however, NRCS could "review, revise, and supplement the WRPO, as needed, to ensure that program goals [were] fully and effectively achieved."  *Id.* (internal citations omitted).

Mr. Landgraf enrolled in the WRP and signed a WRPO for his land in Tivoli, Texas.  Subsequently, relying on the WRPO, Mr. Landgraf alleged that he had entered into a contract

with the NRCS for the removal of brush from his property, and that the NRCS had breached its contract by failing to do so.  The Court, however, determined that the WRPO was not a contract because "[t]he regulatory framework indicates that [NRCS] did not intend to be bound by the terms of the preliminary WRPO."  *Id.* at 333.  Indeed, the Court explained that "[b]ecause the NRCS retained the ability to modify the WRPO at its own discretion, the NRCS could not have intended to be bound by the preliminary WRPO's terms."  *Id.* at 334.

Similar to *Landgraf*, following the submission of Form 14654, the IRS retained the discretion to examine a taxpayer and assess additional penalties.  The Streamlined Procedures "are intended for U.S. taxpayers whose failure to disclose their offshore assets was non-willful." 2014 Streamlined Procedures.  As the court in *Maze* recognized, participation under the Streamlined Procedures does not prohibit the IRS from "pursu[ing] the taxpayer for fraud-related penalties for all years and for willful FBAR penalties for all years, as well as other penalties from the years *prior* to the three years subject to [the] program."  *Maze*, 206 F. Supp. 3d at 7 (citing 2014 Streamlined Procedures).  Indeed, Form 14654 specifically states: "I recognize that if the Internal Revenue Service receives or discovers evidence of willfulness, fraud, or criminal conduct, it may open an examination or investigation that could lead to civil fraud penalties, FBAR penalties, information return penalties, or even referral to Criminal Investigation."[13]  By leaving open the IRS's ability to examine a taxpayer and impose penalties beyond the MOP, the IRS did not intend to be bound by Mrs. Jones's representations, and a contract between Mrs. Jones and the IRS was not formed.

---

[13] By contrast, when participating in OVDP, the IRS and the taxpayer sign a closing agreement under § 7121, which constitutes a final settlement of all matters relating to the disclosure period and to years prior to the disclosure period.

20

2.      **The Streamlined Procedures were not an offer that Mrs. Jones could accept by performance.**

Although unclear from their complaint, plaintiffs appear to allege that the Streamlined Procedures constituted an offer to Mrs. Jones to settle her tax compliance issues that she could accept by following the guidelines.  Quite to the contrary, the Streamlined Procedures were not an offer but an invitation to individuals with foreign financial assets who claim that their non-compliance with the laws was non-willful to resolve these compliance issues.  The Government was then free to accept or reject the certification to the extent it found evidence of willfulness or fraud.  Indeed, "the United States cannot be contractually bound merely by invoking the cited statute and regulation."  *Merrick v. United States*, 846 F.2d 725, 726 (Fed. Cir. 1988).

Where the Streamlined Procedures leave open that a taxpayer's submissions are subject to review, examination, and potential penalties is insufficient to constitute an offer.  In *Cutler-Hammer, Inc. v. United States*, 441 F.2d 1179, 1182 (Ct. Cl. 1971), the Court of Claims found that the provision of a Regulation to purchase silver from the Treasury Department requiring applications to be subject to the approval of the Director of Domestic Gold and Silver Operations was "alone sufficient to negate existence of a contract until the approval is granted."  *Id.* at 1182-83.  The plaintiffs in *Cutler-Hammer* were not invited to accept by performance: "The only effort to be expended by these plaintiffs was to fill in the blanks of a Government prepared form."  *Id.* Similarly, in *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 72 (1990), the Claims Court stated that "[m]ere solicitations, invitations or instructions from the Government are not offers to contract that bind the Government upon plaintiff's completion of a form, even when the solicitations, invitations or instructions are embodied in a statute or regulation."  *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 72 (1990), *aff'd*, 949 F.2d 1145 (Fed. Cir. 1991).  And, in *Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 56 (1987), the Claims Court stated

21

that "[i]t would do violence to traditional contract theory, not to mention the operation of government, to hold that any statute requiring some action by a citizen to obtain a benefit or protect a right constituted an open offer to contract."  *Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 556 (1987), *aff'd*, 846 F.2d 77 (Fed. Cir. 1988) (unpublished table decision). Accordingly, the mere invitation and instructions by the IRS to certain individuals to bring into compliance their tax and reporting obligations is insufficient to constitute an open offer to contract with the government.

**B.     Even if there were a contract, plaintiffs have failed to state a claim for breach of contract.**

Even if this Court were to determine that Form 14654 was a contract between Mrs. Jones and the IRS, which it should not, plaintiffs have failed to identify a breach of the purported contract.  Plaintiffs allege that the government breached the purported contract when, following an examination of the Joneses' income tax and FBAR compliance, the IRS assessed an FBAR penalty against Mrs. Jones for her willful failure to file FBARs.  (Compl. ¶ 11.)  However, Form 14654, which Mrs. Jones signed and submitted, permits, by its express terms, that exact action.

In their complaint, plaintiffs omit a key statement contained in Form 14654.  Specifically, the form provides: "I recognize that if the Internal Revenue Service receives or discovers evidence of willfulness, fraud, or criminal conduct, it may open an examination or investigation that *could lead to* civil fraud penalties, *FBAR penalties*, information return penalties, or even referral to Criminal Investigation."  (Def. Exh. 1 at A-3.)  The description of the Streamlined Procedures states: "if returns properly filed under these procedures are subsequently selected for audit under existing audit selection processes, the taxpayer will not be subject to . . . FBAR penalties, *unless the examination results in a determination that . . . the FBAR violation was*

22

*willful*." (*Id.*)  Moreover, "[a]ny previously assessed penalties with respect to those years, however, will not be abated." (*Id.*)

Here, the IRS opened an examination of Mrs. Jones's income tax and FBAR compliance and asserted willful FBAR penalties.  Because the IRS took action that, by the express terms of Form 14654, it was permitted to do, the IRS did not breach the purported contract. *T. C. Bateson Const. Co. v. United States*, 319 F.2d 135, 158 (Cl. Ct. 1963) (finding no breach of contract where the government's action was within the terms of the contract).  Accordingly, plaintiffs have failed to state a claim for breach of contract.

## CONCLUSION

WHEREFORE, based on all of the reasons set forth above, defendant requests that the Court enter an order dismissing the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,

June 29, 2021          /s/ Jason S. Selmont
JASON S. SELMONT
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Tel: (202) 616-3338
Fax: (202) 514-9440
Jason.S.Selmont@usdoj.gov

DAVID A. HUBBERT
  Acting Assistant Attorney General
DAVID I. PINCUS
  Chief, Court of Federal Claims Section
G. ROBSON STEWART
  Assistant Chief, Court of Federal Claims Section

*/s/ G. Robson Stewart*
Of Counsel

Attorneys for the United States