No. 21-1202 T
(Senior Judge Marian Blank Horn)

_____
_____


# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
_____

STEPHANIE L. FLINT AND DAVID J. JONES, AS EXECUTORS,
ESTATE OF MARGARET J. JONES,

                                                    Plaintiffs,
                        v.
            THE UNITED STATES,

                                                    Defendant.

_____

# OPPOSITION TO THE UNITED STATES
# MOTION TO DISMISS THE COMPLAINT
_____

Patrick W. Martin

Attorney for Plaintiff

525 B Street, Suite 2200

San Diego, CA 92101

Telephone: 619.238.1900

Facsimile: 619.235.0398

Patrick.martin@procopio.com

_____
_____

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 21-1202T
(Senior Judge Marian Blank Horn)

STEPHANIE L. FLINT AND DAVID J. JONES, AS EXECUTORS,
ESTATE OF MARGARET J. JONES

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

## OPPOSITION TO THE UNITED STATES
## MOTION TO DISMISS THE COMPLAINT

This is a case of first impression. Plaintiff, Stephanie L. Flint and David J. Jones, as Executors of the Estate of Margaret J. Jones, by and through Plaintiff's attorneys, hereby bring this opposition to the motion to dismiss the complaint, filed by the government on June 29 of 2021.

The government's motion to dismiss, relates to the civil action against the United States of America, Department of the Treasury, Internal Revenue Service ("**IRS**") for so-called "MOP" amounts paid by Mrs. Jones during her lifetime ($156,795); that has no statutory authority and does not exist in the law and was part of a breach of contract that was illegally exacted from Margaret J. Jones prior to her death, in contravention of statutes of the United States.

This Court does not lack jurisdiction over plaintiff's breach of contract and illegal exaction claim, since the so-called 5% "Miscellaneous Offshore Penalty" ("**MOP**") paid by Mrs. Jones is not a tax or penalty as described anywhere in Title 26, the tax code. Therefore, Mrs. Jones Estate does not need to meet the pre-requisites to file a refund suit for taxes or tax penalties, for which this is not. Additionally, plaintiff did not fail to state a claim for which relief can be granted in a breach of contract theory. The government asserts there has been no breach of contract by the IRS. This can only be determined at trial. It is not an issue ripe for a motion to dismiss, when effectively it is disguised as a motion for summary judgment. This, since Form 14654 sets forth the express

contractual terms (with a (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States) of a binding contract between the IRS and Mrs. Jones. The IRS then breached the agreement when it assessed $3,411,984 of Title 31 penalties without finding "willful, fraudulent or criminal conduct" by Mrs. Jones. Her remedy should be the recovery of the $156,795 MOP payment.

# TABLE OF CONTENTS

**Page**

I.    JURISDICTION ..................................................................................... 1

II.    BACKGROUND ..................................................................................... 1

    A.    The IRS's Offshore Voluntary Disclosure Program ("OVDP"). ........................... 4

    B.    Streamlined Filing Compliance Procedures ("SFCP"). .............................. 4

    C.    The "Miscellaneous Offshore Penalty." ............................................ 4

    D.    Mrs. Jones' Disclosure and Subsequent Examination .......................... 5

    E.    Mrs. Jones' Title 26 and FBAR Examination ...................................... 5

    F.    United States District Court FBAR Cases ........................................ 6

III.    PRELIMINARY STATEMENT ........................................................ 6

    A.    The IRS is Conflating the Rules of the Offshore Voluntary Disclosure Program ("OVDP") to Bad Actors and the Streamlined Filing Compliance Procedures ("SFCP") for Benign Actors. ........................ 6

    B.    The Miscellaneous Offshore Penalty ("MOP") paid by Mrs. Jones to enter the SFCP is not a Title 26 penalty, and thus, it does not require a claim for refund filing as a pre-requisite to this claim. For that reason, this Court has subject matter jurisdiction over plaintiff's illegal exaction and breach of contract claim. ................................................................ 7

    C.    Plaintiff did not fail to state a claim for breach of contract. ..................... 7

IV.    ARGUMENTS AND COUNTERARGUMENT ........................................ 8

    A.    The Government is Conflating the Rules of the OVDP and the SFCP. Bad Actors v. Benign Actors. ......................................................... 8

        1.    Mrs. Jones filed Form 14654 to enter into the SFCP. ................. 8

        2.    Mrs. Jones did not enter the OVDP (for Bad Actors). ................ 9

    B.    Mrs. Jones filed Qualified Amended Returns and did NOT file a "Quite" Disclosure. ...................................................................... 10

    C.    This Court has subject matter jurisdiction over plaintiff's illegal exaction claim because plaintiff had no requirement to file a claim for refund. This, because the MOP paid by Mrs. Jones to enter the SFCP is not a Title 26 penalty. ................................................................ 12

V.    PLAINTIFF DID NOT FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ...................................................................... 16

A.      The submission of Form 14654 created a contract between Mrs. Jones and the IRS. The IRS is bound by the terms of the agreement .......................................... 16

VI.    CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander Proudfoot v. United States*
    454 F.2d 1379 (Ct. Cl. 1972) .................................................13

*Calloway v. Comm'r*
    691 F.3d 1315 (11th Cir. 2012) .............................................12

*Davis v. U.S.*
    811 F.3d 335 (9th Cir. 2016) ................................................18

*Dewees v. United States*
    272 F. Supp. 3d 96 (D.D.C. 2017), *aff'd* 767 Fed. App'x 4 (D.C. Cir. 2019) .........................4

*Flora v. United States*
    362 U.S. 145 (1960).............................................................13

*Girling Health Sys., Inc. v. United States*
    22 Cl. Ct. 66 (1990) ............................................................18

*Gluck v. United States*
    84 Fed. Cl. 609 (2008) ..................................................12, 13

*Gustashaw v. Comm'r*
    696 F.3d 1124 (11th Cir. 2012) .............................................11

*Harrison v. IRS*
    No. 20-cv-828, 2021 WL 930266 (D.D.C. Mar. 11, 2021) .....................11

*Hometown Fin., Inc. v. United States*
    409 F.3d 1360 (Fed. Cir. 2005)..............................................16

*Kimble v. United States*
    141 Fed. Cl. 373 (2018) ........................................................19

*Maze v. Internal Revenue Serv.*
    *206 F. Supp. 3d 1* (D.D.C. 2016) ...........................................4

*U.S. v. Flume*
    390 F.Supp.3d 847 (D.C. S.D. Texas 2019) ...............................19

*United States v. Boyle*
    469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985).....................11, 12

*United States v. Dalm*
   494 U.S. 596 (1990) .................................................................................13

**FEDERAL STATUTES, REGULATIONS, AND RULES**

26 U.S.C.
   § 6511(a) ..............................................................................................14
   §§ 6651-6751 ...........................................................................................4
   § 6651(a). .............................................................................................14
   § 6662(a) ..............................................................................................11
   § 6662(b) ..............................................................................................11
   § 6671 .................................................................................................15
   § 6671(a) ..............................................................................................15
   § 6672 .................................................................................................15
   § 6674 .................................................................................................15
   § 6677 .................................................................................................15
   § 6679 .................................................................................................15
   § 6682 .................................................................................................15
   § 6684 .................................................................................................15
   § 6685 .................................................................................................15
   § 6686 .................................................................................................15
   § 6688 .................................................................................................15
   § 6689 .................................................................................................15
   § 6690 .................................................................................................15
   § 6692 .................................................................................................15
   § 6693 .................................................................................................15
   § 6694 .................................................................................................15
   § 6695 .................................................................................................15
   § 6695A ...............................................................................................15
   § 6702 .................................................................................................15
   § 6704 .................................................................................................15
   § 6705 .................................................................................................15
   § 6707 .................................................................................................15
   § 6707A ...............................................................................................15
   § 6708 .................................................................................................15
   § 6713 .................................................................................................15
   § 6714 .................................................................................................15
   § 6751 .................................................................................................15
   § 7201 ..................................................................................................9
   § 7203 ..................................................................................................9
   § 7206(1) ...............................................................................................9
   § 7422 .............................................................................................7, 12
   § 7803 .................................................................................................15
   § 7803(a)(2)(A) .........................................................................................4

iv

28 U.S.C.
    § 1346(a)(1) ................................................................................................1
    § 1491(a)(1) ................................................................................................1

31 U.S.C.
    § 5322 ........................................................................................................9

I.R.C.
    § 7803(a)(2)(A) ................................................................................4, 5, 17

Treasury Regulations
    § 1.6664-2 ..............................................................................................2, 10
    § 1.6664-4(b)(1) ......................................................................................11
    § 301.6402-2(b) ................................................................................7, 8, 12

U.S. Code
    § 6511 ......................................................................................................14

## OTHER AUTHORITIES

Form 14654, "*Certification by U.S. Person Residing in the United States, for Streamlined Domestic Offshore Procedures.*" ........................................................6

https://perma.cc/4Q6H-295Q ................................................................................8

Internal Revenue Service, Streamlined Filing Compliance Procedures (Feb. 17, 2021) https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures ................................................................................9

# I.   JURISDICTION

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1346(a)(1) and 28 U.S.C. §1491(a)(1).

# II.   BACKGROUND

Jeffrey and Margaret Jones were born in New Zealand and Canada respectively. The Joneses met in Canada, and in 1954 decided to move to California. The government attempts to paint Mrs. Jones, posthumously as some kind of tax cheat by using terms such as: she "choose to come clean," filed a "quiet disclosure," was "willful," etc. The actual facts, including the audit report of the IRS revenue agent, Ms. Keli Kim, and her deposition, along with Mrs. Jones testimony during her deposition, shows she was an honest, transparent individual who followed her tax advice faithfully and promptly.

Upon Mr. Jeffrey Jones' death in 2013, Mrs. Jones sought legal advice for the purpose of how to handle Mr. Jeffrey Jones' New Zealand will and estate. That is how, Mrs. Jones learned for the very first time of the existence of the Title 31 Report of Foreign Bank and Financial Accounts ("**FBAR**") and the "FBAR" reporting requirements. On June 26, 2013, Mrs. Jones then promptly filed a timely FBAR for the 2012 tax year.

When Mrs. Jones she learned about the FBAR obligation, she was "horrified" and "disgusted," because she did not like owing taxes, in other words, she wanted to pay them timely and not have them outstanding. *See* Deposition of Mrs. Jones at pages 72-73 (lines 7-21 and 1-10), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647); *See generally* Deposition of Mrs. Jones at pages 79-84, Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647).

During Mrs. Jones deposition, as part of the United States District Court FBAR cases, she stated the following:

> "Q*uestion by Mr. Ed Walton ("**Q**"): Once you learned about this FBAR obligation,*

*did you take steps to do something correct the – the issue?*
*Answer by Mrs. Jones ("A"): Definitely.*
*Q: And what did you do?*
*A: Well, contacted accountants.*
*Q: Okay. And so what did you learn from contacting accountants about what you*
*needed to do?*
*A: Well, I needed to file those forms and pay whatever was necessary.*
*Q: Okay. And did you undertake to do that?*
*A: Of course."  Deposition of Mrs. Jones at page 73 (lines 15-25), Jones v. United*
*States, 2:19-cv-04950 (2019) (No. 19-82647).*

On July 7, 2014, as a result of learning of her mistakenly missed reporting obligations after

Mr. Jeffrey Jones died, and without prompting or contact from the IRS, Mrs. Jones filed Qualified

Amended Returns ("**QAR**") per section 1.6664-2 of the Treasury Regulations, for the years 2011

and 2012. These QARs reported all previously unreported income from all foreign accounts all

located in Canada and New Zealand, paying outstanding income taxes, and checking the "yes" box

on the Part IV of Schedule B, reflecting the ownership of these foreign accounts.

On March 16, 2015, again without prompting from the IRS, and for good measure, Mrs.

Jones filed a Domestic Streamlined Submission ("**SDO**") with the IRS which included  (i) the

QARs (Forms 1040X for 2011 and 2012 that had been previously filed on July 7, 2014 and an

original form 1040 for 2013 that was filed on April 15, 2014); (ii) filed outstanding FBARs for

2008 through 2013; (iii) submitted a certificate of non-willfulness, and (iv) paid a $156,795.26

MOP as the consideration for protection against any potential 50% Willfulness Penalty that might

have been assessed against her; all requirements of the IRS' program they set forth in Streamlined

Filing Compliance Procedures ("**SFCP**").

The express terms of the contract of this SDO, provide that if the IRS conducts an

examination and finds "evidence of willfulness, fraud or criminal conduct" an examination will

begin and penalties may be imposed. However, the IRS never found evidence of willfulness, fraud

120815-00000004/5323772.9

or criminal conduct by Mrs. Jones, and still determined additional Title 31 FBAR penalties in the amount of $3,411,984 dollars based upon a "willful blindness" theory. Mrs. Jones challenged those determinations (FBAR penalties) in U.S. District Court; ironically as a legally blind nonagenarian.

As plainly stated in the SDO, it was always Mrs. Jones' incorrect (but in good faith and not unreasonable) understanding of the law that foreign funds would be taxed exclusively in each respective foreign country and there would be U.S. tax obligation only if, and when, such foreign funds were brought to the United States, something which had not happened before the SDO was filed. The Joneses' good-faith (but mistaken) understanding of their reporting obligation is evidenced by the statements from their foreign banks, which reported income from their foreign investments, but the majority of the statements also showed that taxes were deducted in the country in which the account was located. *See generally,* Deposition of Mrs. Jones at 62-63, Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647).

Notably, the Joneses' tax preparer of over 25 years, CPA William Burke, never asked whether the Joneses had foreign accounts, even though he knew that they previously lived in Canada. Deposition of Mrs. Jones at 76 (lines 10-25), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647).  In fact, Mr. Burke did not know to ask the Joneses about their foreign accounts because he was not familiar with the FBAR reporting requirements and, did not have any clients reporting foreign bank accounts. *Id.* Instead, when Mr. Burke first met with the Joneses and prepared their tax returns for the first time some 25 years ago, he copied the information he received from the tax return filed by the previous preparer and asked the Joneses if there were any changes, which there were not. Deposition of Mrs. Jones at page 76 (lines 10-25), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647).

The facts will show Mrs. Jones was not a "tax cheat" as implied in the motion to dismiss.

The facts will show she was a blind, hardworking, diligent, high school graduate (albeit, blind in her nonagenarian years) who promptly complied with her tax obligations during her lifetime. After a two-year audit, the IRS determined she was due a tax refund of $15,872.

**A.     The IRS's Offshore Voluntary Disclosure Program ("OVDP").**

The purpose of the OVDP created by the IRS was to encourage non-compliant taxpayers facing the possibility of criminal liability to come into compliance with the IRS. *Maze v. Internal Revenue Serv., 206 F. Supp. 3d 1, 5-6* (D.D.C. 2016); *Dewees v. United States,* 272 F. Supp. 3d 96,66 (D.D.C. 2017), *aff'd* 767 Fed. App'x 4 (D.C. Cir. 2019); *see also* IRM 9.5.11.9 (addressing the IRS' voluntary disclosure practice).[1] This OVDP was not a program applicable to Mrs. Jones as she had a good faith misunderstanding of the law.

**B.     Streamlined Filing Compliance Procedures ("SFCP").**

The SFCP is in stark contracts to the OVDP. Initially, the SFCP was designed for U.S. citizens residing abroad who had not filed income tax and information returns. *See* IRM. 4.63.3.; *See, Maze v. Internal Revenue Serv., 206 F. Supp. 3d 1, 5-6* (D.D.C. 2016); In 2014, the procedure expanded the eligibility criteria and created two distinct procedures, to include individuals like Mrs. Jones who resided in the United States. *Id.*

**C.     The "Miscellaneous Offshore Penalty."**

The MOP is an amount collected by the IRS when a taxpayer enters into the SFCP, and by its contractual terms, "in lieu of all other penalties."[2] The government argues in its motion to dismiss that the IRS has the right to impose the MOP under 26 U.S.C. 7803(a)(2)(A) that gives the IRS authority "to administer, manage, conduct, direct, and supervise the execution and application

---

[1] *See also* Hale Sheppard, *Kimble, Six cases about willfulness FBAR and constructive knowledge* (2019).
[2] As referenced in Form 14654 ". . . my foreign financial assets subject to the 5% miscellaneous offshore penalty . . ."

4

of the internal revenue laws." I.R.C. §7803(a)(2)(A). The MOP is not part of the Internal Revenue laws. Congress decided to specifically enumerate various penalties in Title 26, Subtitle F, Chapter 68 "additions to the tax, additional amounts, and assessable penalties" set forth in excruciating detail in sections 6651 through 6751, as tax penalties. *See also,* 26 U.S.C .§6672-6714.  Nowhere is there reference to the administratively enacted MOP. Further, the government is stretching the meaning of section 7803(a)(2)(A), to try to include this MOP amount as a penalty that is not set forth in Title 26 (or even in Title 31), but was created as part of an administrative program called SFCP, created by the IRS. Thus, this penalty is not a Title 26 tax or penalty nor a Title 31 penalty, and it is not subject to the requirements of first filing an administrative claim for tax refund. Saying it is "fundamentally a tax refund suit" does not make it so.

## D.     Mrs. Jones' Disclosure and Subsequent Examination

In 2015, after Mrs. Jones was advised of the requirements of the complex U.S. tax law, she reported all foreign financial accounts in Canada and New Zealand and the income and foreign taxes paid thereon, through the SFCP in effect at that time. On April 13, 2015, Mrs. Jones filed Form 14654, as part of the SFCP. Before filing Form 14654, Mrs. Jones had already filed QARs to amend her previously filed returns. Mrs. Jones never filed a "quiet return," as argued by the government; but rather on two separation occasions gave express notice to the IRS of her tax return filing positions. First, Mrs. Jones filed QAR reporting all her previously unreported Canadian and New Zealand accounts. Second, when she learned about the SFCP, she signed Form 14654 and reported all of her Canadian and New Zealand accounts to the IRS, yet again.

## E.     Mrs. Jones' Title 26 and FBAR Examination

After more than two years of a detailed and global audit by the IRS, on February 8, 2019, the IRS then assess willful FBAR penalties against Mrs. Jones for her "willful failure to disclose"

the foreign financial accounts she owned.  This, after a tax refund of $15,872 was determined, and no Title 26 penalties of any king were assessed.

## F.   <u>United States District Court FBAR Cases</u>

This action for a recovery of the payment of the so-called "MOP" is related to (but different) than the prior actions taken by the government regarding two cases: *Margaret J. Jones, individually v. United States* Case No. 2:19-cv-4950 JVS(RAO) related caption *Margaret J. Jones, as Executor, Estate of Jeffrey L. Jones v. United States,* Case No. 2:19-cv-001730-JVS(RAO), collectively the "**Joneses FBAR Cases**" herein. The Joneses FBAR Cases involved the IRS's assessment of FBAR 50% "willful" penalties against Jeffrey Jones (his estate or "Estate") and Margaret Jones (collectively, the "**Joneses**"), in the total amount of $3,411,984. Specifically, the IRS determined, with absolutely no evidentiary foundation, that the Joneses "willfully" failed to timely file FBARs with the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") to report certain Canadian and New Zealand accounts they held in their individual names as U.S. resident citizens. They implied willfulness without evidence to support the assertion and relied upon the wrong box checked on Part IV of Schedule B as their jackpot.

The cases were set for jury trial on two separate occasions, and postponed due to COVID. Mrs. Jones then settled those cases for $1,300,000 dollars after being diagnosed with terminal cancer. **She died shortly thereafter.**

### III.   PRELIMINARY STATEMENT

## A.   <u>The IRS is Conflating the Rules of the Offshore Voluntary Disclosure Program ("OVDP") to Bad Actors and the Streamlined Filing Compliance Procedures ("SFCP") for Benign Actors.</u>

Mrs. Jones did not file or have anything to do with the OVDP, and she never filed a "quite

6

disclosure." The defendant's motion tries to paint Mrs. Jones (may her soul Rest in Peace) as a Bad Actor. Fortunately, her testimony is preserved from her deposition with the U.S. Attorney's office, attorney Andrew Pribe. Deposition of Mrs. Jones at 106, Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647). She entered the SFCP, openly and transparently, and paid the MOP required by the agreement in Form 14654, "*Certification by U.S. Person Residing in the United States, for Streamlined Domestic Offshore Procedures*." The IRS assessed no Title 26 penalties of any kind after a two-year audit. Mrs. Jones was the poster child of a Benign Actor.

**B.**     **The Miscellaneous Offshore Penalty ("MOP") paid by Mrs. Jones to enter the SFCP is not a Title 26 penalty, and thus, it does not require a claim for refund filing as a pre-requisite to this claim. For that reason, this Court has subject matter jurisdiction over plaintiff's illegal exaction and breach of contract claim.**

A tax refund suit, in accordance with 26 U.S.C. §7422, can only be filed if an adequate claim for refund was filed previously. Treas. Reg. §301.6402-2(b). However, the MOP described in Form 14654, that was paid by Mrs. Jones ($156,795.26), is not a tax or penalty amount set forth in Title 26. Thus, a claim for refund of tax or penalty was not possible to be filed prior this claim.

**C.**     **Plaintiff did not fail to state a claim for breach of contract.**

Form 14654 signed by Mrs. Jones, was an express contract with the government. Its terms included a (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States. Finally, the government breached the contract when, without finding "willful, fraudulent or criminal conduct" by Mrs. Jones, it assessed $3,411,984 of Title 31 penalties.

## IV.    ARGUMENTS AND COUNTERARGUMENT

**A.    <u>The Government is Conflating the Rules of the OVDP and the SFCP. Bad Actors v.</u>**

<u>**Benign Actors.**</u>

The Internal Revenue Manual ("**IRM**") explains that the SFCP and the OVDP program are different programs, created by the IRS for taxpayers in different circumstances. IRM. 4.63.3.

The initial SFCP was made available beginning September 2012, and was significantly expanded effective July 1, 2014, just days before the QARs had already been filed. These procedures "accommodate taxpayers **that acted non-willfully** and do not need the protection from criminal prosecution offered by OVDP or the Voluntary Disclosure Practice. Streamlined Procedures are approved by the Commissioner and may be changed or terminated at any time." [emphasis added] *Id.*

1.    <u>Mrs. Jones filed Form 14654 to enter into the SFCP.</u>

When the SFCP started, it was applicable to few taxpayers and only those residing outside of the U.S. *Id.*  The program was expanded in July 2014 to include taxpayers like Mrs. Jones who resided in the U.S. In 2014, the program was expanded to include those who were not living abroad, but had unreported offshore accounts.

According to the IRS instructions and Form 14654, the "Title 26 miscellaneous offshore penalty" ("**MOP**") is equal to 5 percent of the highest aggregate balance/value of the taxpayer's foreign financial assets that are subject to the miscellaneous offshore penalty during the years in the covered tax return period and the covered FBAR period.  Internal Revenue Service, U.S. Taxpayers    Residing    in    the    United    States,    (last    visited    on    08/09/2021), https://www.irs.gov/individuals/international-taxpayers/u-s-taxpayers-residing-in-the-united-states. This MOP is paid by the taxpayer entering the program, in consideration for the IRS not to

8

assess additional penalties. *Id.*

For such reason, Mrs. Jones decided to enter into the program and report again (she already had reported once on her QARs filed on July 7th, 2014) the accounts in Canada and New Zealand.

Incidentally, the government argues that her late husband's estate did not enter into the SFCP and thus, implies that the estate was being secretive about Mr. Jeffrey Jones' accounts. However, the estate did not enter into the program because it was not clear it was ever available for an estate; which has since been corrected by the IRS in their later SFCP rules. We have communications from the government expressing they were not sure if the Jeffrey Jones Estate was eligible for the program. This shows that not even the government was sure for whom this administratively created program was available.[3] Thus, the reason why the estate did not enter into the SFCP was it was not obviously available for the estate of Mrs. Jones late husband. Benign Actors. The IRS has since added estates as eligible participants. Internal Revenue Service, Streamlined Filing Compliance Procedures, (Feb. 17, 2021) https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures.

2.      Mrs. Jones did not enter the OVDP (for Bad Actors).

The OVDP offered U.S. taxpayers with intentionally undisclosed income from offshore assets a compliance avenue to resolve income tax liabilities, various tax information reporting obligations relating to foreign financial assets, and FBAR reporting requirements. OVDP provided protection from criminal prosecution and a uniform civil penalty structure for Bad Actor taxpayers

---

[3] Ms. Keli Kim testified that Mrs. Jones' power of attorney represented "[t]hat at the time of the filing, the IRS instructions were not clear . . .on reporting for deceased husband or deceased spouse" Keli Kim's Deposition page 57 (lines 10-20), and [t]hat they didn't feel comfortable making – and nobody felt comfortable making that [certification] statement for Mr. Jones." Keli Kim's Deposition, page 59 (line 17) through page 61 (line 7).

9

who came forward voluntarily and report their noncompliance. IRM. 4.63.3.

The IRS states that there are possible criminal charges related to false tax returns including tax evasion, filing a false return and failure to file an income tax return if a taxpayer does not come in under the OVDP and the IRS finds any of the previously stated acts. 26 U.S.C. §7201, §7206(1), §7203. The intentional failure to file an FBAR and the filing of a false FBAR are both violations that are subject to criminal penalties under 31 U.S.C. § 5322. These are Bad Actors.

None of this conduct was applicable to Mrs. Jones. Her testimony and the conclusions of the IRS Revenue Agent so demonstrate. [4] *See generally,* Deposition of Mrs. Jones, Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647). For that reason, she entered into the SFCP, for Benign Actors, and not the OVDP. In other words, the OVDP was never available for Mrs. Jones, as she never faced any criminal liability, she was not a Bad Actor. Plus, she had already filed QARs in good faith before she was aware she was even eligible for the revised rules of the SFCP.

Thus, Mrs. Jones did not file or enter into the OVDP, for Bad Actors, and the rules and limits for this the OVDP designed for those who intentionally did not disclose income or file FBARs is not relevant for Mrs. Jones or this case at hand.

**B.**     **Mrs. Jones filed Qualified Amended Returns and did NOT file a "Quite" Disclosure.**

The IRS describes as "quiet" disclosures, where Mrs. Jones filed amended returns and pays any related tax and interest for previously unreported offshore income without otherwise notifying the IRS.[5] "Quiet" disclosures are commonly filed by Bad Actors. This is not applicable to Mrs. Jones, a Benign Actor. She entered into the SFCP and openly reported all Canadian and New

---

[4] Ms. Keli Kim concludes her RAR by stating. "[t]here is no available evidence that Mrs. Jones knew about FBAR filing requirements." Deposition of Mrs. Keli Kim at page 207 (lines 18-25), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647).
[5] Jack Townsend, Reports of Death of Quiet Disclosure are an Exaggeration (August 09, 2021) http://federaltaxcrimes.blogspot.com/2009/08/reports-of-death-of-quiet-disclosure.html.

Zealand accounts to the IRS.

Further the government claims that Mrs. Jones filed amended returns "quietly" before entering into the program, again implying secrecy or bad motives. This is not accurate, Mrs. Jones filed "QARs." A QAR is an amended return, with several regulatory requisites, that are filed after the due date of the return for the taxable year. Treas. Reg. §1.6664-2.

Thus, Mrs. Jones fully disclosed to the IRS the previously unreported information and had no intent to be "quiet" when filing and complying with the detailed regulations applicable to QARs.

It is important to repeat that, the government did not assess penalties, no Title 26 penalties, no negligence or civil fraud penalties after an extensive two-year global tax audit. None. This, regardless of the low threshold the government has to impose negligence penalties or accuracy-related penalties. 26 U.S.C. §6662(a).

In other words, she was not a Bad Actor and was not trying to hide any information, she merely was not aware previously of her duties to file, as a high school graduate who was raised in a rural community in Canada. *See,* Deposition of Mrs. Jones at page 17 (line 21), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647); *See also,* Jones MSJ Points and Authorities (Individual) at p. 15 (lines 17-19), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647).

*Harrison v. IRS*, No. 20-cv-828, 2021 WL 930266 (D.D.C. Mar. 11, 2021), is yet another example of how the government is conflating the Bad Actors cases for those individuals who had criminal exposure and had gone into the OVDP. Mrs. Jones was not such a case and the government concluded she owed no penalties of any sort under Title 26, unlike this case and the many others cited by the government that were not cases where the taxpayer had participated in the SFCP.  This case with the SFCP is a case of first impression and to the extent the government continues to try to paint the deceased Mrs. Jones as a Bad Actor, the detailed facts already collected

from the District Court case will demonstrate the opposite as she was the poster child for those individuals enticed into the program of the SFCP. That is not her legacy.

In conclusion, the IRS is conflating the rules of the OVDP and the SFCP to paint her posthumously as a Bad Actor. Mrs. Jones never filed or entered into the OVDP, she signed the Form 14654 contract in good faith to enter into the SFCP. The SFCP was created for taxpayers like Mrs. Jones, who learned about their tax obligations and decided to immediately correct their filings and inform the IRS about it with a specific payment owed; the MOP.

**C.**      **This Court has subject matter jurisdiction over plaintiff's illegal exaction claim because plaintiff had no requirement to file a claim for refund. This, because the MOP paid by Mrs. Jones to enter the SFCP is not a Title 26 penalty.**

A tax refund suit, in accordance with 26 USC §7422, can only be filed if a claim for refund was filed previously. Treas. Reg. §301.6402-2(b). Plaintiff agrees that when a taxpayer is asking for a tax refund, they need to file a claim for refund in accordance with Title 26, before being able to access the courts and request such refund. *See generally, Gluck v. United States*, 84 Fed. Cl. 609 (2008); *United States v. Dalm*, 494 U.S. 596 (1990). However, in accordance with the tax laws and regulations, the MOP described in Form 14654, and that was paid by Mrs. Jones, is not reflected in title 26. Thus, a claim for tax refund was not required to be filed prior to this procedure.

*Alexander Proudfoot v. United States*, 454 F.2d 1379 (Ct. Cl. 1972), stands for the proposition that any suit for a refund of taxes, in that case – amounts of accumulated earnings tax; must first have been preceded by a claim for a refund of those very taxes. In the case at hand, there was no payment of taxes and no determination of any Title 26 penalties with respect to taxes which is required by law, and therefore there is not even a remedy for an administrative claim for refund of an amount paid as part of a contract with the IRS.

12

Similarly, *Flora v. United States*, 362 U.S. 145 (1960), is the seminal Supreme Court case decision that stands for the proposition that a full payment of taxes and tax penalties must be paid prior to bringing a suit for a refund in court. This jurisdictional requirement is not applicable in the case of Mrs. Jones. Here, there is no dispute that she made a full payment of the MOP, albeit not a tax or a penalty calculated with respect to any tax. The government cannot argue she owes additional amounts and must somehow pay those before availing herself of the claims in this court.

Similar to Flora, the taxpayer in *Gluck v. United States*, 84 Fed. Cl. 609 (2008), filed a claim for abatement where the tax amounts were never paid. Like the Flora decision before it, all taxes must be paid in advance prior to bringing a suit for a refund of taxes. Mrs. Jones is not bringing a suit for refund of taxes, and Gluck, that requested declaratory relief, is again not applicable. The estate of Mrs. Jones is not asking for declaratory relief, but rather the return of the $156,795.26 that was illegally exacted and part of a breach of contract of the terms with the IRS. Hence, this court has jurisdiction unlike the court in Gluck.

Essentially, Part I and II of Subchapter A, of Chapter 68 of Subtitle F enumerates various penalty amounts that can apply to taxpayers. None of them address the MOP payment made by Mrs. Jones.  Similarly, Subchapter B, of Chapter 68 of Subtitle F enumerates various "assessable penalties" and again none of these penalty amounts reflect the MOP payment made by Mrs. Jones.

26 U.S.C. §6511(a) discusses that a claim must be filed for ". . . from the time the return was filed or 2 years from the time the ***tax was paid***. . ."  Here, we have no ***tax*** that was paid – as the MOP is not a tax or penalty as described anywhere in Title 26, no matter how hard the government tries to stretch the definition in the statute.

### *26 U.S.C. § 6511 - Limitations on credit or refund*

*(a) Period of limitation on filing claim*
*Claim for credit or refund of an overpayment of <u>any tax imposed</u> by this title in respect of <u>which tax</u> the taxpayer is required to file a return shall be filed by the*

*taxpayer within 3 years from the time the return was filed or 2 years from the time the <u>tax was paid</u>, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the <u>tax was paid</u>. Claim for credit or refund of an overpayment of <u>any tax</u> imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the <u>time the tax was paid.</u>*
*(b) Limitation on allowance of credits and refunds*
*(1) Filing of claim within prescribed period*
*No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, <u>unless a claim for credit or refund is filed</u> by the taxpayer within such period.*
[emphasis added]

The Procedure and Administration provisions of Title 26, Subtitle F, defines additions to the tax and additional amounts as a percentage amount of the tax owed in case of failure to (1) to file a return; (2) pay tax due; or (3) pay any amount in respect of any tax required to be shown on a return. 26 U.S.C. § 6651(a). Thus, this MOP is not an "addition to tax" as it is not calculated with reference to any tax owed. Mrs. Jones owed no taxes and was actually due a refund of $15,872.

A claim for refund is only required as to a tax or tax penalty pursuant to Title 26. This 5% MOP is not a tax or penalty in the statute. Importantly, 26 U.S.C. §6671 defines when a "penalty" is assessed as a "tax" and provides as follows:

*"(a) Penalty assessed as tax*
*The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as <u>taxes</u>. Except as otherwise provided, any reference in this title to <u>**"tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter."**</u>*
(emphasis added)

The MOP is not found anywhere in this subchapter.

The SDO provides that – "*The MOP only applies to taxpayers who use the streamlined domestic offshore procedures. The MOP is in lieu of all other potential penalties.*" Finally, along these lines, the procedural requirements of 26 U.S.C. §6751 subparagraph (a), which is found in Subchapter C of Chapter 68 of Subtitle F, provides in its entirety as follows:

*"(a) Computation of penalty included in notice*

14

*The Secretary shall include with **each notice of penalty** under this title information with respect to the **name of the penalty**, the **section of this title under which the penalty is imposed**, and a **computation of the penalty**." [emphasis added]*

Here, there was no notice of any penalty made by the IRS (which is required by 26 U.S.C. §§6671(a) and 6751), there is no reference to the section of the title (e.g., Title 26 or Title 31). Plus, the IRS made no computation of such purported penalty at any time. Hence, the MOP is not a "penalty" as defined in Title 26 as it meets none of these statutory or procedural requirement.

The government argues that this MOP is a Title 26 penalty because of the Commissioner's authority under 26 U.S.C. §7803 to "administer, manage, conduct, direct and supervise the execution and applications of the internal revenue laws." However, this is, in contrast, to a number of the various penalties specifically identified in Title 26. Such as 26 U.S.C. §§6672, 6674, 6677, 6679, 6682, 6684, 6685, 6686, 6688, 6689, 6690, 6692, 6693, 6694, 6695, 6695A, 6702, 6704, 6705, 6707, 6707A, 6708, 6713, and 6714.

In this case, the government is arguing that it can simply, in a very imprecise way lump this particular payment (the MOP), as a "substitute" penalty under Title 26. If so, what section is it substituting in this case, where no Title 26 penalty was assessed against Mrs. Jones?

If this is a permissible argument for the government, then the government would be able to use that same argument to say they can simply assert a tax, not actually based upon any specific section of Title 26, but assert it in a particular case they themselves identify it is a "substitute" tax for the calculation of an actual income tax owing under Title 26. The tax law is precise for many reasons.

In conclusion, there is no statutory basis for the MOP, in Title 26 or Title 31. Further, this MOP payment amount that was created by the IRS as part of their SFCP and nowhere is it calculated with reference to any penalty as a substitute of a Title 26 penalty. Finally, because the

15

MOP paid by Mrs. Jones to enter into the SFCP is not a Title 26 penalty, then no claim for refund was required to be filed, previous to filing this suit.

### V.      PLAINTIFF DID NOT FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT

**A.      The submission of Form 14654 created a contract between Mrs. Jones and the IRS. The IRS is bound by the terms of the agreement.**

An enforceable agreement between two parties, must have the following elements: "(1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *See Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005).

Here, the government represented in the explicit terms of the contract with Mrs. Jones, on Form 14654, *Certification by U.S. Person Residing in the United States for Streamlined Domestic Offshores Procedures* (August 2014) that she needed to have filed a return with errors, with a failure to report foreign financial assets. That was her case. These terms are as follows:

> "*In consideration of the Internal Revenue Service's agreement not to assert other penalties with respect to my failure to report foreign financial assets as required on FBARs or Forms 8938 or my failure to report income from foreign financial assets, I consent to the immediate assessment and collection of a Title 26 miscellaneous offshore penalty for the most recent of the three tax years for which I am provided amended income tax returns. I waive all defenses against and restrictions on the assessment and collection of the miscellaneous offshore penalty, including any defense based on the expiration of the period of limitations on assessment or collection. I waive the right to seek a refund or abatement of the miscellaneous offshore penalty." [emphasis added]*

Here, (1) both the government and the taxpayer intended to enter into this agreement, the government set forth Form 14654 and Mrs. Jones agreed to the specific terms; (2) with Form 14654 and the SFCP the government established an offer and by completing and signing such Form, Mrs. Jones accepted the offer; (3) the agreement itself states that "in consideration of the IRS's

16

agreement not to assert other penalties" Mrs. Jones consented to immediate assessment and collection of the MOP, she paid $156,795.26; and (4) the IRS issued Form 14654 under the powers the IRS has to "administer, manage, conduct, direct and supervise the execution and application of the internal revenue laws," to create programs like the SFCP. 26 U.S.C. §7803(a)(2)(A). The terms delineated in the Form were established by the IRS with the powers delegated to the IRS by statute to create and execute this agreement with the taxpayer. Here, the IRS breached the terms of their contract not to assert other penalties which they did, in a total amount of $3,411,984; which cost her dearly in attorney's fees for litigation brought in the U.S. District Court and precious time during the last several years of her life.

While it is true that Form 14654 subjects the agreement to the possibility that the IRS may conduct a full examination of a taxpayer who used the procedure, this is merely another term of the contract. The terms of the contract, determines that if the IRS conducts an examination and finds "evidence of willfulness, fraud or criminal conduct" an examination will begin and penalties may be imposed. This provision does not prevent the terms from creating a binding contract. This provision merely provides another condition of the contract and as part of the consideration, the taxpayer is to not have committed willful, fraudulent or criminal conduct. Thus, if that representation is not met, there will be a breach of contract by the taxpayer.

The government cited *Girling Health Sys., Inc. v. United States,* 22 Cl. Ct. 66, 72 (1990) to say that the Court of Claims has stated in the past that filing out a form issued by the IRS is not enough to enter into a contract. Different from Girling, here Mrs. Jones was filing a Certification with an agreement issued by the IRS, in Girling the taxpayer was filing a request to which he did not get a response when filing a request for a particular tax status. The Court in Girling, decided the status request filed by the taxpayer was not a contract between the IRS and the taxpayer. In

contrast to <u>Girling</u>, in the case at hand, the IRS and the taxpayer agreed on the terms of a contract. Form 14654 was not a request from Mrs. Jones, but rather a binding agreement between Mrs. Jones and the IRS.

Further, *Girling* dealt with an implied contract claim. The Court ruled that there was no implied in fact contract. This is very different than the current case at hand where there was indeed an express written contract where the IRS' written terms provide in part – "In consideration of the Internal Revenue Service's Agreement not to assert other penalties . . ." There is no assertion that there was any implied contract, on the contrary, there was an actual written contract.

Similarly, the IRS enters into binding agreements with taxpayers regularly, when it enters into a closing agreement. In *Davis v. U.S.,* 811 F.3d 335, 338–39 (9th Cir. 2016), the court concluded that closing agreements are contracts governed by federal common law. Meaning, the IRS can in fact enter into contracts with taxpayers. As was the case with Mrs. Jones.

The IRS under the terms of the contract opened an audit of the relevant years of which Mrs. Jones entered into the SFCP. The government did not find "willful, fraudulent or criminal conduct" by Mrs. Jones, and still the government imposed additional FBAR penalties for those years. The agreement stated that if the government found "willful, fraudulent or criminal conduct" then it could impose additional penalties. In this case, the government did not find such conduct and still imposed additional "willful blindness" penalties, further stating that Mrs. Jones state of mind was not relevant when imposing the additional penalties. This contradicts the contract terms. Further, merely signing a tax return under penalty of perjury, is not enough to prove knowledge or constructive knowledge. *See U.S. v. Flume*, 390 F.Supp.3d 847, (D.C. S.D. Texas 2019); *Kimble v. United States*, 141 Fed. Cl. 373, 377–78 (2018).

It is clear that the contract required Mrs. Jones to have "willful, fraudulent or criminal

conduct" for the IRS to be able to impose penalties under Title 26. Thus, the state of mind of Mrs. Jones must be relevant per the very terms.

The government later asserted that whether Mrs. Jones conduct was " . . . *due to negligence, inadvertence, or mistake or conduct that is the result of a good faith misunderstanding of the requirements of the law*" was irrelevant as to whether the IRS could assess additional Title 31 penalties, based upon a "willful blindness" theory; since the only requirement was not whether Mrs. Jones (or her late husband) had " . . . *a good-faith misunderstanding of the requirements of the law*"; rather merely signing a return with errors was sufficient to assess the additional Title 31 penalties: as asserted in the USA's motion for summary judgement: "*Even if he did not read the return, however, he is deemed to have knowledge of its contents. Courts have long held that a person who signs a document is deemed under the law to know its contents.*"

Further, the auditor, determined that Mrs. Jones did not know about her FBAR obligations to file and report the FBARs. MSJ Points and Authorities (Individual) at p. 15 (lines 17-19), Jones v. United States, 2:19-cv-04950 (2019) (No. 19-82647). This means, she did not have "willful, fraudulent or criminal conduct." The breach happened when the government asserted the additional Title 31 penalties without finding "willful, fraudulent or criminal conduct" by Mrs. Jones.

In conclusion, the Form 14654 signed by Mrs. Jones, represented an agreement with the government, this form was not merely a request to be filed with the government, but an agreement with consideration between Mrs. Jones and the government. Finally, the government breached the contract when, without finding "willful, fraudulent or criminal conduct" by Mrs. Jones, the government assessed further penalties.

19

## VI.   CONCLUSION

WHEREFORE, based on all of the reasons set forth above, plaintiff respectfully requests that the Court denies defendant's motion to dismiss the complaint.

DATED: August 10, 2021                              PROCOPIO, CORY, HARGREAVES &
                                                    SAVITCH LLP


                                            By:   */s/ Patrick W. Martin*
                                                  Patrick W. Martin

                                                  Attorney for Plaintiff Stephanie L. Flint and
                                                  David J. Jones, as Executors of the Estate of
                                                  Margaret J. Jones

20